```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CSX TRANSPORTATION, INC.,

                    Plaintiff,           MEMORANDUM & ORDER
                                         12-CV-1865(JS)(AKT)
        -against-

EMJAY ENVIRONMENTAL RECYCLING, LTD.,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:     Christopher Merrick, Esq.
                   Keenan Cohen & Howard, P.C.
                   165 Township Line Road, Suite 2400
                   Jenkintown, PA 19046

                   John Joseph Morris, Esq.
                   Kelly, Rode & Kelly, L.L.P.
                   330 Old Country Road
                   Mineola, NY 11501

For Defendant:     Brian Lee Gardner, Esq.
                   Sullivan Gardner, P.C.
                   7 East 20th Street
                   New York, NY 10003
```

SEYBERT, District Judge:

Currently pending before the Court is CSX Transportation, Inc.'s ("CSX" or "Plaintiff") motion to dismiss Defendant Emjay Environmental Recycling, Ltd.'s ("Emjay" or "Defendant") counterclaim.[1] For the following reasons, Plaintiff's motion is GRANTED.

---

[1] Plaintiff also has a pending motion to amend the Second Amended Complaint (Docket Entry 26), which will be decided by Magistrate Judge A. Kathleen Tomlinson in a separate Order.

## BACKGROUND[2]

Plaintiff commenced this action on April 16, 2012 against Defendant and filed an Amended Complaint shortly thereafter on May 30, 2012. Plaintiff is an interstate rail carrier. (Am. Compl. ¶ 1.) Defendant is a corporation organized under the laws of the State of New York that gains revenue by taking material onto its premises. (Ans. ¶¶ 62, 65.) The Amended Complaint alleges that, at various points during 2010 and 2011, Plaintiff and Defendant entered into private price lists and contracts ("Price Lists") pursuant to 49 U.S.C. § 10709. (Am. Compl. ¶ 14.) Under these Price Lists, which Plaintiff claims were binding contracts, Defendant agreed to compensate Plaintiff for any freight that Defendant shipped on Plaintiff's rail lines. (Am. Compl. ¶¶ 15-16.)

Between May and July 2011, Plaintiff made several freight shipments (the "Shipments") at Defendant's request. (Am. Compl. ¶ 18.) Each time, Defendant or an affiliated entity acting on Defendant's behalf entered electronic bill of lading data for the Shipments using Plaintiff's "ShipCSX" application. (Am. Compl. ¶ 19.) As such, Plaintiff avers, Defendant assumed responsibility for making payment to Plaintiff. (Am. Compl.

---

[2] The following facts are taken from Plaintiff's Amended Complaint, Defendant's Answer to the Amended Complaint and Counterclaim, and the documents referenced therein and are presumed to be true for the purposes of this Memorandum and Order.

¶ 21.) Such payments were not made, however, and Defendant has failed or refused to pay even after Plaintiff's demand for payment. (Am. Comp. ¶ 25.)

On or about July 19, 2011, Defendant executed and delivered a Promissory Note to Plaintiff, pursuant to which Plaintiff agreed to loan Defendant $334,998 to cover some of the unpaid freight charges that had accrued between November 2010 and April 2011. (Am. Compl. ¶¶ 6-7.) The Promissory Note, however, did not cover the full amount of the freight charges, and Defendant owes Plaintiff an additional $296,460. (Am. Compl. ¶ 22.) In exchange for the loan, Defendant agreed to make an initial $50,000 down payment to Plaintiff with weekly installment payments on the balance of the Promissory Note. (Am. Compl. ¶ 8.) Defendant also agreed: (1) to waive any defenses, objections, setoffs, credits or other claims with regard to its debt to Plaintiff under the Promissory Note (Am. Compl. ¶ 9(i)); (2) to pay the entire balance plus interest by December 14, 2011 (Am. Compl. ¶ 9(ii)); (3) to pay interest at a rate of 12% per annum (Am. Compl. ¶ 9(iii)); and (4) to pay Plaintiff a late charge of 10% for any late installment payment (Am. Compl. ¶ 9(iv)).

Defendant made the initial down payment but thereafter failed to make any installment payments. (Am. Compl. ¶¶ 10-11.) Plaintiff brings claims for breach of contract in connection

with Defendant's alleged breach of the Promissory Note and failure to pay freight charges under the Price Lists. On July 17, 2012, Defendant filed an answer and therein asserted a counterclaim against Plaintiff for breach of the Promissory Note. (Docket Entry 8.) Defendant alleges that Plaintiff failed to provide the "implied and explicit" level of service agreed upon. (Ans. ¶ 65.) More specifically, Defendant has volume restrictions on the amount of material that can be on its premises, and Plaintiff's failure to consistently move material off the premises directly reduced Defendant's revenue. (Ans. ¶ 65.)

## DISCUSSION

Plaintiff now seeks to dismiss Defendant's counterclaim. The Court will first address the applicable legal standard on a motion to dismiss before addressing Plaintiff's motion more specifically.[3]

---

[3] Plaintiff's motion to dismiss Defendant's counterclaim relates to Plaintiff's Amended Complaint and Defendant's Answer thereto. However, since filing its motion to dismiss, Plaintiff has interposed a Second Amended Complaint ("SAC") (Docket Entry 14), and Defendant has again filed an Answer to the Second Amended Complaint along with a counterclaim (Docket Entry 16). Defendant's counterclaim, as alleged in its Answer to the Second Amended Complaint, is nearly identical to the counterclaim as alleged in the Answer to the Amended Complaint. Thus, technically, Plaintiff's pending motion to dismiss is moot. However, the Court will construe the motion as a motion to dismiss the amended counterclaim.

4

I.  Standard of Review under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II. Plaintiff's Motion to Dismiss Defendant's Counterclaim

Defendant's counterclaim alleges that "[p]art of the understanding between CSX and Emjay, implied and explicit, was that CSX would provide a certain level of service to CSX." (Ans. ¶ 65.) According to Defendant, Plaintiff provided "poor and inconsistent service" to Defendant, resulting in Defendant's loss of revenue and income. (Ans. ¶ 65.) The counterclaim goes on to explicitly allege that "[b]y failing to provide the

5

required proper and consistent service, CSX has materially breached the promissory note claimed to have been entered into with Emjay."[4] (Ans. ¶ 66 (second).)

From the outset, the deficiencies in Defendant's counterclaim are apparent. For instance, Plaintiff argues that the Promissory Note contains a choice of law provision specifying application of Pennsylvania law. (Docket Entry 13-1 at 6-7.) Defendant counters that it does not base the counterclaim on the Promissory Note, but rather that "the counterclaim seeks damages regarding the poor service provided by Plaintiff to Defendant." (Docket Entry 17 at 3.)

The language Defendant uses in alleging a counterclaim clearly specifies that it is based upon the Promissory Note. See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., L.L.C., 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012) (Since Defendant is represented by counsel, "the Court has no obligation to construe [the] Complaint liberally . . ." (internal quotation marks and

---

[4] Defendant's counterclaim also appears to allege a claim for breach of the implied covenant of good faith and fair dealing. However, Defendant makes clear that the counterclaim does not assert an independent claim for such. (Docket Entry 17 at 3 ("To the extent that the counterclaim mentions in a sentence that Plaintiff's poor service was also a breach of the covenant of good faith and fair dealing in the Promissory Note, this is in the nature of a defense to the Note, not an independent claim for damages under the Note.").) Accordingly, the Court presumes that the counterclaim asserts only one cause of action and does not include a cause of action for breach of the implied covenant of good faith and fair dealing.

6

citation omitted)).  Perhaps recognizing that its breach of contract claim as alleged pursuant to the Promissory Note may not succeed, Defendant attempts to recharacterize its claim through its opposition briefs.

As Defendant correctly notes, there are at least two sets of contracts involved in the instant action, the Promissory Note and the Price Lists.  (Docket Entry 17 at 4.)  Defendant's opposition implies that the counterclaim relies upon the Price Lists, not the Promissory Note.  However, Defendant cannot use its opposition brief to amend its allegation.  See Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."); O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

Furthermore, whether Pennsylvania law or New York law applies, Defendant ultimately fails to state a claim for breach of contract. To state a breach of contract claim under New York law, Defendant, as counterclaimant, must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the [counterclaim plaintiff], (3) breach of contract by the [counterclaim defendant], and (4) damages."  San Diego

7

Cnty. Emps. Ret. Ass'n v. Maounis, 749 F. Supp. 2d 104, 129 n.7 (S.D.N.Y. 2010) (internal quotation marks and citations omitted); accord In re Adelphia Commc'ns Corp., No. 02-41729, 2007 WL 2403553, at *4 (Bankr. S.D.N.Y. Aug. 17, 2007). Similarly, to state a breach of contract claim under Pennsylvania law, Defendant must allege "(1) the existence of a valid and binding contract to which the plaintiff and defendant were parties; (2) the essential terms of the contract; (3) that [the counterclaim] plaintiff complied with the contract's terms; (4) that the [counterclaim] defendant breached a duty imposed by the contract; and (5) that damages resulted from the breach." Tech. Based Solutions, Inc. v. Elecs. Coll., Inc., 168 F. Supp. 2d 375, 381 (E.D. Pa. 2001).

Under either state's breach of contract law, there must be some allegation of the contract upon which the claim is based and an allegation as to the terms of the contract or how there was a breach. See In re Hydrogen, L.L.C., 431 B.R. 337, 358 (Bankr. S.D.N.Y. 2010) (dismissing breach of contract claim because Amended Complaint did not identify contractual agreements in question); Hart v. Univ of Scranton, 838 F. Supp. 2d 324, 327-28 (M.D. Pa. 2011) (dismissing breach of contract claim because plaintiff failed to plead the terms of contract or specific breach of those terms); In re Adelphia Commc'ns Corp., 2007 WL 2403553, at *5 ("To survive a motion to dismiss, the

8

Equity Committee must, at a minimum, allege the terms of the contract and elements of the alleged breach with respect to each defendant."). It is not clear whether Defendant bases its counterclaim on the Promissory Note--although this is the only contract referenced in the counterclaim--or upon the Price Lists or some verbal contract. Nor does the counterclaim provide any insight as to the "level of service" that Plaintiff was to supply.

Further, the counterclaim fails to provide Plaintiff with "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotation marks and citation omitted). Defendant's allegations of "understandings" between Plaintiff and Defendant and that Plaintiff was to provide some amorphous level of service falls significantly short of providing such notice. See Sosnoway v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 472 (E.D.N.Y. 2011) (vague allegations did not put defendants on notice of the actual basis for the claim).

In fact, Defendant's failure to comply with the pleading requirements in alleging its counterclaim is obvious from the parties' briefs and supplemental briefs in connection with the counterclaim. For instance, Plaintiff raises a series of contentions in the alternative, arguing that Defendant's

9

counterclaim should be dismissed even if it is considered to be a claim for promissory estoppel, a claim for set off, or some other cause of action. (Docket Entry 21.) Plaintiff then submitted a supplemental brief in support of its motion to dismiss the counterclaim, arguing that if Defendant intends to assert a claim for "poor rail car service," this Court does not have subject matter jurisdiction because the ICC Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10101, invests the Surface Transportation Board with exclusive jurisdiction over such claims. (Docket Entry 25-3.)

Plaintiff's confusion is understandable, as the counterclaim is subject to various interpretations. Ultimately, however, the Court cannot address whether it has subject matter jurisdiction over the counterclaim or whether the counterclaim is subject to dismissal for some other reason because it is not clear what Defendant is claiming. Thus, Plaintiff's motion to dismiss the counterclaim is GRANTED, and Defendant's counterclaim is DISMISSED.

## CONCLUSION

Plaintiff's motion to dismiss the counterclaim is GRANTED, and Defendant's counterclaim is DISMISSED.

However, the Second Circuit has stated that "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication

10

that a valid claim might be stated." Cuoco v. Mortisugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court grants Defendant leave to amend its counterclaim to address the pleading defects articulated above. If Defendant wishes to file an amended counterclaim, it must do so on or before April 22, 2013.

                                      SO ORDERED.

                                      /s/ JOANNA SEYBERT
                                      Joanna Seybert, U.S.D.J.

Dated:   March 25, 2013
        Central Islip, NY