UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x
CSX TRANSPORTATION, INC.,

                          Plaintiff,

          -against-                          MEMORANDUM & ORDER
                                             12-CV-1865(JS)(AKT)
EMJAY ENVIRONMENTAL RECYCLING, LTD.,

                          Defendant.
---------------------------------------x
APPEARANCES
For Plaintiff:       Christopher Merrick, Esq.
                     Kennan Cohen & Howard PC
                     165 Township Line Road, Suite 2400
                     Jenkintown, PA 19046

                     John Joseph Morris, Esq.
                     Kelly, Rode & Kelly, LLP
                     330 Old Country Road
                     Mineola, NY 11501

For Defendant:       Brian Lee Gardner, Esq.
                     Sullivan Gardner, P.C.
                     7 East 20th Street
                     New York, NY 10003

SEYBERT, District Judge:

          Currently pending before the Court is: (1) plaintiff CSX Transportation, Inc.'s ("Plaintiff") motion for summary judgment (Docket Entry 56), and (2) defendant Emjay Environmental Recycling, Ltd.'s ("Defendant") cross-motion for summary judgment (Docket Entry 57). For the following reasons, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion is DENIED.

Plaintiff operates as an interstate rail carrier.[2] (Pl.'s 56.1 Stmt., Docket Entry 48-1, ¶ 1.) Defendant is a transfer station which generates revenue by charging customers to place construction and demolition debris, municipal solid waste, and recyclables at its facility. (Pl.'s 56.1 Stmt. ¶¶ 2-3.) After Defendant separates the materials, it sends the waste to off-site landfills for disposal. (Pl.'s 56.1 Stmt. ¶ 4.) For example, Defendant sent the waste to landfills in various locations, including Ohio, via rail. (Pl.'s 56.1 Stmt. ¶¶ 6-7; Def.'s 56.1 Counterstmt. ¶¶ 6-7.)

"Between 2010 and 2012 all of [Defendant's] rail shipments were moved via a combination of the New York and Atlantic Railway Company ('NY&A'), [Plaintiff], and the Ohio Central Railway Company ('OHCR')." (Pl.'s 56.1 Stmt. ¶ 10.) NY&A provided carrier service from Defendant's facility in Brentwood, New York to an interchange point with Plaintiff. (Pl.'s 56.1 Stmt. ¶ 11.) Plaintiff then provided "long haul

---

[1] The following material facts are drawn from the parties' Local Civil Rule 56.1 Statements ("56.1 Stmt.") and Counterstatements ("56.1 Counterstmt.") and the evidence in support. Where relevant, the Court will note specific factual disputes.

[2] Defendant apparently denies this description but offers no alternative characterization. (Def.'s 56.1 Counterstmt., Docket Entry 48-2, ¶ 1.)

carriage" to Ohio, where the OHCR transported the freight to its final destination.  (Pl.'s 56.1 Stmt. ¶¶ 12-13.)

Although the parties dispute the exact nature and consequences of the contracts, they agree that Plaintiff and Defendant entered into several agreements to govern the transport of Defendant's freight.  (Pl.'s 56.1 Stmt. ¶ 18; Def.'s 56.1 Counterstmt. ¶ 18.)  For example, Plaintiff and Defendant entered into "Contract CSXT 85189" and "Contract 18699."[3]  (Pl.'s 56.1 Stmt. ¶ 18.)  Contract CSXT 18699 provided that it was in effect from January 1, 2010 through December 31, 2010 and Contract CSXT 85189 provided that it was effective from April 1, 2011 through March 31, 2013.  (Pl.'s 56.1 Stmt. ¶¶ 19-20.)  Both provided:

> CAR SUPPLY: If [CSX] is to furnish cars, [CSX] will do so on a non-guaranteed basis subject to availability and distribution considerations . . . .
>
> PAYMENT AND CREDIT: Payment of all rates and charges that may accrue and become due from Industry to CSXT in connection with this Contract shall be made within the timeframes set forth in, and subject to the finance charges, late charges, and other provisions of Section 16, Tariff CSXT 8100 series (Merchandise) . . . . If [Defendant] fails to pay all rates and charges as required by this paragraph, CSXT may, without

---

[3] NY&A and OHCR were also involved in these contracts, although the parties dispute whether they were completely separate signatories or were defined as a single "Carrier" with Plaintiff.  (See Pl.'s 56.1 Stmt. ¶ 18; Def.'s 56.1 Counterstmt. ¶ 18; Def.'s 56.1 Stmt., Docket Entry 49-1, ¶ 7.)

limitation, cancel or suspend its
performance under, or terminate this
Contract. [Defendant] may not set off or
withhold any payment due under this Contract
in any dispute with any Carrier.

ENTIRE UNDERSTANDING: This Contract
represents the entire understanding of the
parties, may not be modified without their
written consent, shall be construed (except
for matters referring to or traditionally
governed by or construed under federal laws,
regulations, or case law) according to the
laws of the State of Florida without regard
to its conflict of laws rules, and has been
executed by the duly authorized
representatives of the parties.

(Pl.'s 56.1 Stmt. ¶ 21; Merrick Decl., Docket Entry 56-3, Ex.

4.) For each shipment of commodity, Defendant paid a single

"through rate" directly to Plaintiff. (Def.'s 56.1 Stmt. ¶¶ 13-

14.) According to Plaintiff, it then pays NY&A and OHCR for

their participation in the shipment of Defendant's freight,

regardless of whether Defendant has paid Plaintiff. (Pl.'s 56.1

Counterstmt., Docket Entry 49-2, ¶ 15.)

For a period of time, Defendant apparently shipped

freight through Plaintiff. According to Plaintiff, however,

Defendant began accruing an outstanding balance, causing

Defendant's wire transfers to be rejected for insufficient

funds. (Pl.'s 56.1 Stmt. ¶ 26.) On July 19, 2011, Defendant's

President, Michael Cholowsky, executed a Promissory Note on

behalf of Defendant. (Pl.'s 56.1 Stmt. ¶ 27; Def.'s 56.1

Counterstmt. ¶ 27.) The Promissory Note pertains to a loan of

$334,998 to cover unpaid freight charges from November 2010 through April 2011.[4]  (Pl.'s 56.1 Smt. ¶ 28.)  Pursuant to the Promissory Note, Defendant gave Plaintiff a $50,000 down payment.  (Pl.'s 56.1 Stmt. ¶¶ 29, 31; Def.'s 56.1 Counterstmt. ¶¶ 29, 31.)  According to Plaintiff, Defendant did not make any further payments.  (Pl.'s 56.1 Stmt. ¶ 32.)  Plaintiff additionally maintains that, after the Promissory Note, it continued to ship Defendant's freight between January 2011 and July 2012, incurring $519,704.72 in freight charges that Defendant also did not pay to Plaintiff.  (Pl.'s 56.1 Stmt. ¶¶ 34, 36.)

## DISCUSSION

Plaintiff and Defendant now each move for summary judgment.  The Court will first address the applicable legal standard before turning to the parties' motions more specifically.

## I.  Legal Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In

---

[4] Defendant's counterstatement denies this, and many other statements without any purported characterization of its own or explanation as to why the statement is incorrect other than a vague assertion that the statement is not supported.  (See Def.'s 56.1 Counterstmt. ¶ 28.)

considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on

other grounds as stated in <u>Ochei v. Coler/Goldwater Mem'l Hosp.</u>,
450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

"The same standard applies where, as here, the parties
filed cross-motions for summary judgment . . . ." <u>Morales v.</u>
<u>Quintel Entm't, Inc.</u>, 249 F.3d 115, 121 (2d Cir. 2001) (citing
<u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 244 (2d Cir. 2000)).
Thus, even if both parties move for summary judgment and assert
the absence of any genuine issues of material fact, "a district
court is not required to grant judgment as a matter of law for
one side or the other." <u>Heublein, Inc. v. United States</u>, 996
F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion
must be examined on its own merits, and in each case all
reasonable inferences must be drawn against the party whose
motion is under consideration." <u>Morales</u>, 249 F.3d at 121
(citation omitted).

## II. <u>Subject Matter Jurisdiction</u>

Initially, the Court notes that Defendant seeks
dismissal, asserting that the Court lacks subject matter
jurisdiction over this action. Specifically, Defendant
maintains that Plaintiff, NY&A, and OHCR formed a joint venture,
precluding relief to Plaintiff alone, that Plaintiff cannot
maintain the action individually, and that, alternatively, the
action must be dismissed based on misjoinder. The Court will

address each of these arguments in turn.   (Defs.' Br. for S.J.,
Docket Entry 59, at 7-19.)

   A. <u>Joint Venture</u>

      Defendant   maintains   that   the   rail   transportation
services  at  issue  were  undertaken  by  a  joint  venture  and  that
this  Court  lacks  subject  matter  jurisdiction  over  the  action
"brought  in  its  correct  form."[5]   (Def.'s  Br.  for  S.J.  at  7-8.)
The Court disagrees.

      The  citizenship  of  a  joint  venture  depends  upon  the
citizenship  of  each  of  its  members.   <u>See</u>  <u>Schiavone Constr. Co.</u>
<u>v. City of N.Y.</u>,  99 F.3d 546, 548 (2d Cir. 1996)  ("For diversity
purposes,  the  citizenship  of  a  joint  venture  is  the  citizenship
of  each  of  its  members.").   Here,  it  is  undisputed  that  NY&A  and
Defendant  are  both  citizens  of  New  York.   Accordingly,  if  there

_____

[5] Defendant seeks dismissal for lack of jurisdiction pursuant to
Federal Rule of Civil Procedure 12(b)(1).  "A case is properly
dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) when the district court lacks the statutory or
constitutional power to adjudicate it."  <u>Makarova v. United</u>
<u>States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion
to dismiss for lack of subject matter jurisdiction, the Court
may consider affidavits and other materials beyond the pleadings
to resolve jurisdictional questions.  <u>See</u> <u>Morrison v. Nat'l</u>
<u>Australia Bank, Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008).  The
Court must accept as true the factual allegations contained in
the complaint, but it will not draw argumentative inferences in
favor of Plaintiffs because subject matter jurisdiction must be
shown affirmatively.  <u>See</u> <u>id.</u>; <u>Atlanta Mut. Ins. Co. v. Balfour</u>
<u>Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992); <u>Shipping</u>
<u>Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998).
"A plaintiff asserting subject matter jurisdiction has the
burden of proving by a preponderance of the evidence that it
exists."  <u>Makarova</u>, 201 F.3d at 113.

is a joint venture, there would no longer be diversity of citizenship between the parties, thus divesting the Court of jurisdiction.

In determining whether there was a joint venture, the Court will use Florida law. The three contracts that governed the terms and conditions of Defendant's shipments--CSXT 85189, CSXT 18699, and CSXT 10812 (the "Rail Service Contracts")--and which underlie the Promissory Note, contain a Florida choice of law provision. (See generally Rail Service Contracts, Ex. 4 to Merrick Decl.) Given that this Court allegedly sits in diversity jurisdiction and given New York law, the contractual choice of law provision governs. See New Falls Corp. v. Lall, No. 09-CV-4809, 2010 WL 2076937, at *2 (E.D.N.Y. May 18, 2010) ("A federal court exercising diversity jurisdiction applies the law of the forum state, including its choice of law rules, to determine the applicable substantive law." (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)); Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000) ("New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state has sufficient contacts with the transaction.").

Under Florida law, "a joint venture is a special combination of two or more persons, who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity." Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc., 62 F. Supp. 2d 1316, 1324 (M.D. Fla. 1999) (internal quotation marks and citation omitted). It is "created when two or more entities combine their property or time or a combination of the two to carry out a single business enterprise for profit." Id.

Defendant begins by pointing the Court to Norfolk Southern Railway Co. v. Emjay Environmental Recycling, Ltd., in which Judge Thomas C. Platt found that the real party plaintiff was a joint venture between the plaintiff, Norfolk Southern, and NY&A. No. 09-CV-1322, 2012 WL 976056 (E.D.N.Y. Mar. 19, 2012). There, Plaintiff, Defendant, and NY&A executed a transportation contract in which the parties were jointly referred to as "Railroad." Id. at *1. Like here, the contract itself involved the transport of Defendant's construction and demolition debris via railway. Id. In response to the counterclaim filed by Defendant, the plaintiff filed a third-party complaint against NY&A. Id. at *2. Although the plaintiff withdrew that claim, Defendant filed a cross-claim against NY&A. Id. at *3.

Ultimately, Judge Platt determined that Norfolk Southern and NY&A had engaged in a joint venture under Virginia law.

Norfolk Southern is distinguishable from the case at bar. Although the factual background is similar, the elements of a joint venture under Virginia law are not synonymous with the elements under Florida law. Under Florida law, a joint venture "consist[s] of the following elements: (1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses; and (4) the right of joint control." Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein, 872 F.2d 1536, 1539 (11th Cir. 1989).

Thus, the Court turns to the relevant elements, considering first where there is a common purpose. There is a common purpose, for example, "where each party need[s] the other, as in any partnership in which each partner brings to the enterprise capital, skills, labor, licensing, resources, or knowledge not possessed by the other." Arango v. Reyka, 507 So. 2d 1211, 1213 (Fla. Dist. Ct. App. 1987). Here, the Rail Service Contracts provide that the "Carrier(s) agree(s) to provide rail contract carriage transportation service with reasonable dispatch for Industry at the rates and subject to the additional terms and conditions set forth in" the contract. (Gardner Decl., Docket Entry 60, Exs. D-E; Merrick Decl., Ex. 4.)

Defendant asserts that the use of the word "Carrier" shows that Plaintiff, NY&A, and OHCR were defined jointly, and thus were involved in a joint venture. (Def.'s Br. for S.J. at 12.) While Plaintiff counters that "Carrier" was merely a drafting convenience, it does not necessarily dispute that such contractual language can be sufficient to demonstrate a common purpose. (Pl.'s Opp. Br., Docket Entry 62, at 8); see, e.g., Progress Rail Servs. Corp. v. Hillsborough Reg'l Transit Auth., No. 04-CV-0200, 2005 WL 1051932, at *3 (M.D. Fla. Apr. 12, 2005). Nonetheless, "the relationship created by the contract must still establish the four required elements." Progress Rail Servs. Corp., 2005 WL 1051932, at *3.

As it pertains to a joint proprietary interest, however, this element is lacking.[6] "A joint proprietary interest generally requires joint ownership of the subject matter of the contract." Id. Although Defendant asserts that there was a joint proprietary interest because Plaintiff, NY&A, and OHCR had a joint interest in the financial benefits and profits, this is insufficient. (Def.'s Br. for S.J. at 14); cf. Hung Kang Huang v. Carnival Corp., 909 F. Supp. 2d 1356, 1362 (S.D. Fla. 2012) (dismissing joint venture theory where the plaintiff pled a division of responsibility and sharing in losses). The parties

---

[6] Notably, as outlined in Norfolk, Virginia law does not contain an explicit element of joint proprietary interest. Norfolk Southern R. Co., 2012 WL 976056, at *6 (defining Virginia law).

do not dispute that each carrier used its own equipment, employees, rail, etcetera during each leg of the journey. (See, e.g., Def.'s 56.1 Stmt. ¶ 21; Pl.'s 56.1 Counterstmt. ¶ 21.) Each was responsible for its portion of the trip. Thus, there was no joint ownership of the subject matter of the contract. See Skeen v. Carnival Corp., No. 08-CV-22618, 2009 WL 1117432, at *4 (S.D. Fla. Apr. 24, 2009) (finding that the plaintiff did not adequately plead a joint venture where each entity contributed its own assets individually that were used to conduct the business).

Although this alone ends the inquiry, the Court also notes that the element of joint control is lacking in this case.[7] "For joint venture purposes, the parties must have mutual control over the subject matter of the venture and the authority to bind one another with respect to the subject matter of the venture." Progress Rail Servs. Corp., 2005 WL 1051932, at *3. Here, each carrier had independent--and exclusive--authority over its portion of the transport, and there is no evidence to suggest that the actions of any carrier could bind the others. (See CSXT 85189, Merrick Decl. Ex. 4, at 3 ("Each of the participating Carriers is solely responsible for its portion of the subject transportation.").)

---

[7] Under Virginia law, joint control is not an element, though a "voice" in control and management is necessary. Norfolk Southern R. Co., 2012 WL 976056, at *6.

Accordingly, Defendant's motion is DENIED insofar as it argues a lack of subject matter jurisdiction on the basis of a joint venture.[8]

B. <u>Joinder</u>

Defendant additionally asserts that, even if there is no joint venture, the funds due for the rail transportation services belong to Plaintiff as well as NY&A and OHCR, and therefore they are necessary parties. (Def.'s Br. for S.J. at 18.) Again, the Court disagrees.

Federal Rule of Civil Procedure 19(a) provides:

(1) **Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

---

[8] Similarly, to the extent that Defendant argues that Plaintiff cannot maintain the action individually because the Rail Service contracts were with a joint venture (Def.'s Br. for S.J. at 17), Defendant's motion is DENIED.

FED. R. CIV. P. 19(a). "If a party is required to be joined under Rule 19(a) but cannot be joined without depriving the court of subject matter jurisdiction, the court must proceed to the second step of the analysis under Rule 19(b)." Mazzio v. Kane, No. 14-CV-0616, 2014 WL 2866040, at *3 (E.D.N.Y. June 24, 2014).

Defendant maintains that NY&A and OHCR potentially have an interest relating to the subject of the action and that disposition in their absence could subject Defendant to inconsistent obligations. (Def.'s Br. for S.J. at 19.) Defendant's very premise is flawed, however. Plaintiff is not suing for any amounts that would include portions belonging to NY&A and OHCR. Rather, the Rail Service Contracts specifically provide that Defendant's obligations run directly to Plaintiff, without regard to NY&A and OHCR. (See, e.g., CSXT 18699, Merrick Decl. Ex. 4, at 5.) In fact, Plaintiff pays NY&A and OHCR separately, regardless of whether the client has paid (Fearington Dep., Ex. I to Gardner Decl., Docket Entry 60, at 64), and NY&A and OHCR are not privy to even knowing the rates that Plaintiff charges Defendant. (CSXT 18699 at 4.) Accordingly, adjudication of this matter would not open Defendant up to potential inconsistent obligations. As this is the only basis for Defendant's assertion that NY&A and OHCR are necessary parties, Defendant's motion in this regard is DENIED.

III. <u>Plaintiff's Claims and Defendant's Counterclaim</u>

The Court thus turns to the substantive merits of Plaintiff's motion for summary judgment and Defendant's cross-motion, beginning first with Plaintiff's motion regarding its first claim for breach of the Promissory Note.

A. <u>Plaintiff's Claim for Breach of the Promissory Note</u>

Plaintiff asserts that summary judgment is appropriate on this claim because it has established the necessary elements and Defendant has not proffered a meritorious defense. (Pl.'s Br. for S.J., Docket Entry 56-1, at 6.) The Court agrees.

The Promissory Note, unlike the Rail Service Contracts, contains a Pennsylvania choice of law provision. (Promissory Note, Ex. 5 to Merrick Decl., at 3.) To establish a claim for breach of contract under Pennsylvania law, a plaintiff must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003) (internal quotation marks and citation omitted) (alteration in original).

Here, Defendant agrees that its president, Mr. Cholowsky, signed the Promissory Note. (<u>See</u> Def.'s 56.1 Counterstmt. ¶ 27 (admitting that "a document entitled Promissory Note was executed by [Defendant's] president, Michael Cholowsky").) Defendant further admits that it made the $50,000

down payment.  (Def.'s 56.1 Counterstmt. ¶ 31.)  Moreover, Plaintiff presents evidence to demonstrate that Defendant did not make any further payments under the Promissory Note.  (See Fearington Decl.[9], Ex. 8 to Merrick Decl., ¶¶ 7-8.)  Defendant's witnesses do not dispute that payments were not made.  (Pannulla Dep., Ex. 7 to Merrick Decl., at 77-78; Cholowsky Dep., Ex. 3 to Merrick Decl., at 88.)

Rather than dispute Plaintiff's ability to meet the elements of a breach of contract claim, Defendant's primary opposition is that the court lacks subject matter jurisdiction and/or that Plaintiff failed to join necessary parties-- arguments that the Court has rejected.  (Def.'s Opp. Br., Docket Entry 63, at 9-11.)  Defendant further maintains that its counterclaim, asserting Plaintiff's failure to perform, precludes summary judgment in Plaintiff's favor on both of Plaintiff's alleged claims.  (Def.'s Opp. Br. at 18.)  Specifically, Defendant argues that "the allegations of [its] Counterclaim that the rail services provided in 2011 and 2012 were poor and inadequate raise significant issues as to whether

---

[9] Contrary to Defendant's assertion in its 56.1 Counterstatement, this declaration is admissible because Ms. Fearington is an employee of Plaintiff with personal knowledge competent to testify as to whether Plaintiff in fact received any payments pursuant to the Promissory Note.  See FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

the promissory note was breached, and additionally as to whether [Defendant] is entitled to a set-off from any funds determined to be due on the promissory note." (Def.'s Opp. Br. at 18.)

However, the terms of the Promissory Note are clear and unambiguous. See Del. Valley Wholesale Florist, Inc. v. Ten Pennies Florist, Inc., No. 05-CV-0309, 2005 WL 3307085, at *3 (E.D. Pa. Dec. 1, 2005) (holding that the court must determine the intention of the parties through, if possible, the clear and unambiguous terms of the contract (citing Bohler-Uddenhold Am., Inc. v. Ellenwood Grp., Inc., 247 F.3d 79, 92-93 (3d Cir. 2001)). The Promissory Note specifically provides that Defendant "has no defenses, objections, set offs, credits, or other claims against [Plaintiff] with regard to this debt." (Promissory Note at 2.) Defendant's waiver of any and all defenses and set offs is not subject to any other reasonable interpretation--nor does Defendant argue as much--and the Court must enforce the clear terms of the contract. Cf. Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424-25 (3d Cir. 1994) (explaining that "[a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense" and finding that a release of claims would be enforceable if unambiguous); G.R. Sponaugle & Sons, Inc. v. Hunt Constr. Grp., Inc., 366 F.

Supp. 2d 236, 243 (M.D. Pa. 2004) (enforcing an unambiguous release of claims).

Accordingly, Plaintiff's motion for summary judgment on its first claim for breach of the Promissory Note is GRANTED.

B. <u>Plaintiff's Claim for Breach of the Rail Service Contracts</u>

Plaintiff also seeks summary judgment on its second cause of action for breach of the Rail Service Contracts. Plaintiff asserts that Defendant's defenses are meritless. Defendant cross-moves for summary judgment on Plaintiff's second claim, asserting that Plaintiff relies on inadmissible evidence.[10] The Court agrees with Plaintiff.

The elements of a breach of contract action, as established under Florida law,[11] are: "(1) a valid contract, (2) a material breach, and (3) damages." <u>Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.</u>, 532 F. Supp. 2d 1350, 1357 (M.D. Fla. 2007). "In addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance." <u>Id.</u> (internal quotation marks and citation omitted); <u>see also</u> <u>Whitney Nat'l Bank v. SDC Cmtys., Inc.</u>, No.

---

[10] In raising this argument, it appears that Defendant mistakenly refers to Plaintiff's "third" claim.

[11] As stated previously, the Rail Service Contracts provide that Florida law governs.

09-CV-1788, 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010) (listing performance as an element in addition to a contract, breach, and damages).

The parties do not dispute that a contract existed. Rather, Defendant argues, in part, that Plaintiff cannot establish a material breach because the invoices Plaintiff uses to support its claim are inadmissible. Specifically, Defendant argues that the invoices "were not generated, or created, contemporaneously with any of the shipments, or requests for shipment, at issue in this matter. Rather, the Invoices . . . were printed out after the matter had been assigned to counsel to institute a lawsuit." (Def.'s Br. for S.J. at 20.)

Defendant's argument fails for several reasons. <u>First</u>, the evidence demonstrates that Defendant's employees themselves entered the information--from which the invoices were created--into the ShipCSX system. (<u>See</u>, <u>e.g.</u>, Pannulla Dep. at 25-27; Fearington Decl. ¶ 10.) <u>Second</u>, even assuming that the invoices are hearsay, they fall into the business records exception. Federal Rule of Evidence 803, which sets forth the business records exception, provides:

> (6) **Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business . . .

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness . . .; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6).

The Fearington Declaration clearly establishes that the invoices were kept in the regular course of business and that it was Plaintiff's regular practice to generate and maintain such records. (Fearington Decl. ¶ 5.) Moreover, despite Defendant's arguments, the Court finds nothing inherently troublesome or inadmissible about the invoices because they were not printed out until litigation. Potamkin Cadillac Corp. v. B.R.I. Coverage Corp., 38 F.3d 627, 632 (2d Cir. 1994) ("A business record may include data stored electronically on computers and later printed out for presentation in court, so long as the 'original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice.'" (quoting United States v. Hernandez, 913 F.2d 1506, 1512-13 (10th Cir. 1990)).

Additionally, Defendant questions the trustworthiness of the invoices because Plaintiff maintained the ability to modify them and, in fact, the invoices were modified. (Def.'s Br. for S.J. at 20-21.)  However, Ms. Fearington made only limited changes, such as to change the "Direct Questions To" section to list counsel. (Fearing Dep., Ex. I to Gardner Decl., at 54.)  Given the circumstances surrounding the creation of the invoices, particularly that Defendant was responsible for inputting the information, the Court finds that these minor modifications do not render the invoices inadmissible. <u>See, e.g.</u>, <u>In re Teligent, Inc.</u>, No. 01-12974, 2006 WL 1030417, at *9 (Bankr. S.D.N.Y. Apr. 13, 2006) (noting that the marked up bill was "obviously generated by . . . [the] computerized record system"); <u>F.D.I.C. v. Kisosh Realty Corp.</u>, No. 90-CV-7900, 1992 WL 230156, at *3 (S.D.N.Y. Sept. 1, 1992) (finding that the explanation regarding notations on bills provided sufficient indicia of trustworthiness).  Rather, courts regularly admit documents of this kind, including computer-generated and maintained documents that presumably could be modified at any time. <u>See, e.g.</u>, <u>Stein Hall & Co. v. S.S. Concordia Viking</u>, 494 F.2d 287, 291 (2d Cir. 1974); <u>see also</u> <u>U.S. v. Bonomolo</u>, --- F. App'x ----, 2014 WL 2016573, at *2 (2d Cir. May 19, 2014) (affirming admission of computer-generated spreadsheets at trial); <u>Mazzini v. Republic of Argentina</u>, 282 F. App'x 907, 909

(2d Cir. 2008) ("We reject the argument that the account statements, computer printouts of the account statements, and custodial letters were inadmissible hearsay."). In fact, at least some courts have accepted Plaintiff's invoices as reliable evidence without question. CSX Transp., Inc. v. Blakeslee, No. 11-CV-0533, 2012 WL 3985169, at *2, 6 (D. Conn. Sept. 11, 2012); CSX Transp., Inc. v. Am. Rigging & Crane Serv., Inc., No. 09-CV-0043, 2009 WL 2781025, at *1 (S.D. Ohio Aug. 28, 2009).

Accordingly, Defendant's motion for summary judgment on Plaintiff's second claim because Plaintiff has failed to adduce admissible evidence in support is DENIED.

Thus, having determined that there was a contract and a material breach, the Court turns to the remaining elements. Clearly, Plaintiff has established damages. Other than challenging the admissibility of the invoices, Defendant has not come forward with any evidence to demonstrate that the shipments were not made. Rather, Defendant makes vague assertions that it does not know whether each of the invoices reflects a legitimate shipment and that there is no way of knowing such definitively. Such arguments, however, are not sufficient at the summary judgment stage. See Tucker v. Banknorth, NA, 333 F. Supp. 2d 50, 55-56 (E.D.N.Y. 2004) ("'The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion

through mere speculation or conjecture.'" (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).

Finally, the Court considers whether Defendant's counterclaim at all impacts Plaintiff's ability to prove its claim for unpaid freight charges under the Rail Service Contracts. Specifically, Defendant asserts that Plaintiff failed to perform because the parties had an agreement (the "Dispatch Commitment") that Plaintiff would provide Defendant with nine railcars per day. (See Def.'s Am. Ans. & Counterclaim ("Def.'s Ans."), Docket Entry 38.) The counterclaim references Contract CSXT 85189 and Contract CSXT 18699, both of which provided for "rail contract carriage transportation service to [Defendant] with reasonable dispatch . . . ." (See Merrick Decl. Ex. 4, CSXT 85189 at 1; CSXT 18699 at 3.)

Defendant is correct that, if Plaintiff indeed failed to perform as required, Plaintiff would not be able to maintain its breach of contract action against Defendant. See Hamilton v. Suntrust Mortg. Inc., --- F. Supp. 2d ----, 2014 WL 1285859, at *7 (S.D. Fla. Mar. 25, 2014) ("It is a fundamental principle of Florida contract law that a material breach by one party excuses the performance by the other."). Here, however, both contracts referenced in the counterclaim unequivocally provide, in writing, that "[i]f [CSX] is to furnish cars, [CSX] will do so on a non-guaranteed basis subject to availability and

distribution considerations . . . ." (See Merrick Decl. Ex. 4, CSXT 85189 at 2; CSXT 18699 at 4.)  Contrary to Defendant's assertion, this provision is not ambiguous.  See 49 C.F.R. 375.601 (defining "reasonable dispatch" as meaning in a timely manner).  Thus, the written contracts between the parties flatly contradict any assertion that Plaintiff agreed to provide at least nine railcars per day to Defendant.

Moreover, one of Defendant's 30(b)(6) witnesses, Scott Pannulla, made clear during his deposition that any "Dispatch Commitment" was an oral agreement contemporaneous with the contracts.  (Pannulla Dep. at 98.)  In fact, Defendant's briefs elucidate that it was their "understanding" that Plaintiff would provide nine railcars a day based upon the general timelines for the railcars to make a full roundtrip.  (Def.'s Opp. Br. at 6 & n.5.)  "Under Florida law, evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract." Chase Manhattan Bank v. Rood, 698 F.2d 435, 436 (11th Cir. 1983); accord Ungerleider v. Gordon, 214 F.3d 1279, 1282 (11th Cir. 2000)[12].  Nonetheless, this is the very type of evidence upon which Defendant relies.  See, e.g., Sewell v. D'Allessandro &

---

[12] This rule, known as the parol evidence rule, reflects substantive law, and therefore must be applied by a court sitting in diversity.  See Ungerleider, 214 F.3d at 1282; Madsen, Sapp, Mena, Rodriguez & Co., P.A. v. Palm Beach Holdings, Inc., 899 So. 2d 435, 436 (Fla. Dist. Ct. App. 2005).

Woodyard, Inc., 709 F. Supp. 2d 1251, 1252 (M.D. Fla. 2010);

Madsen, Sapp, Mena, Rodriguez & Co., P.A., 899 So. 2d at 436

(holding that the parol evidence rule precluded evidence that an

accounting consultant orally advised the client that the fee

would be between $10,000 and $12,000).

There is an exception to the parol evidence rule when

the oral agreement induced the execution of a written contract.

See Ungerleider, 214 F.3d at 1282.  However, and although

Defendant does contend that the oral agreement induced it to

enter into business with Plaintiff (See Def.'s Ans. ¶¶ 76-83),

"the inducement exception does not apply where 'the alleged oral

agreement relate[s] to the identical subject matter embodied in

the written agreement and . . . directly contradict[s] an

express provision of the written agreement.'"  Id. (quoting

Linear Corp. v. Standard Hardware Co., 423 So. 2d 966, 968 (Fla.

App. 1 Dist. 1982) (alterations in original)).  Here, any

agreement to provide nine railcars a day directly contradicts

the written contracts which provide for no guarantee of the

amount of railcars.  See Regions Bank v. Old Jupiter, LLC, 449

F. App'x 818, 819-20 (11th Cir. 2011) (finding a contradiction

such that the exception does not apply); Sewell, 709 F. Supp. 2d

at 1252-53 (same).  Thus, the inducement exception does not

apply.

Accordingly, the Court finds that Plaintiff has met all of the necessary elements sufficient to grant summary judgment in its favor on its second counterclaim--there was a valid contract, pursuant to which Plaintiff performed its obligations, which Defendant materially breached, causing damages. Accordingly, Plaintiff's motion for summary judgment on its second claim for breach of the Rail Service Contracts is GRANTED.

## C. Defendant's Counterclaims

Plaintiff also seeks summary judgment on Defendant's counterclaims. The Court will address each of the counterclaims in turn.

### 1. Defendant's First Counterclaim for Breach of Contract

As previously stated, Defendant asserts a counterclaim for breach of contract, alleging that pursuant to the Rail Service Contracts--and specifically, Contract CSXT 85189 and Contract CSXT 18699--Plaintiff agreed to the Dispatch Commitment, but breached that agreement by failing to provide nine railcars per day. (Def.'s Ans. ¶¶ 65-75.) Plaintiff seeks summary judgment on Defendant's first counterclaim as it fails due to the express terms of the contracts and due to Defendant's witnesses. (Pl.'s Br. for S.J. at 14.)

In rendering a decision on Plaintiff's second claim, the Court has also determined that Defendant cannot sustain its counterclaim under the parol evidence rule. Accordingly, for the reasons already stated, Plaintiff's motion for summary judgment on Defendant's first counterclaim (breach of contract) is GRANTED.

2. Defendant's Second Counterclaim for Breach of Quasi-Contract

Defendant also asserts a counterclaim for breach of "quasi-contract," alleging, in the alternative, that Plaintiff represented that it could and would meet Defendant's rail service needs, including by providing not less than nine railcars per day, which it did not do. (Def.'s Ans. ¶ 77.) Plaintiff seeks summary judgment because, inter alia, the existence of the written car supply terms defeats the claim and because Defendant lacks any affirmative evidence. Again, the Court agrees with Plaintiff.

Plaintiff assumes that New York law would apply to any additional contracts or oral agreements. (Pl.'s Br. for S.J. at 16 n.6.) While Defendant does not directly contradict this assumption, the Court finds that the outcome would be the same under either New York or Florida law. Both states' laws provide that, where there is a valid, written contract covering the same subject matter, there can be no recovery in quasi-contract. See

<u>Landmark Equity Fund II, LLC v. Residential Fund 76, LLC</u>, No. 13-CV-20122, 2014 WL 552974, at *7 n.7 (S.D. Fla. Feb. 12, 2014) (noting that there was no difference between Florida and New York law as to quasi-contract claims); <u>U.S. E. Telecomms, Inc. v. U.S. W. Commc'n's Servs., Inc.</u>, 38 F.3d 1289, 1296 (2d Cir. 1994) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." (internal quotation marks and citation omitted)); <u>Karp v. Bank of Am., N.A.</u>, No. 12-CV-1700, 2013 WL 1121256, at *5 (M.D. Fla. Mar. 18, 2013) ("Under Florida law, a plaintiff cannot pursue a quasi-contract claim for unjust enrichment when an express contract exists that concerns the same subject matter." (collecting cases)). Here, given the Rail Service Contracts--which specifically contain a provision regarding a non-guarantee on the amount of railcars--Defendant cannot also recover in quasi-contract on this very same subject matter.[13] Accordingly, Plaintiff's motion for summary judgment

---

[13] The Court, therefore, will not consider any additional arguments for summary judgment on this counterclaim. To the extent that Plaintiff argues for dismissal of the quasi-contract counterclaim because an agreement regarding railcar service would fail on jurisdictional and preemption grounds, the Court does not read the counterclaim to assert such a claim. Although the counterclaim references service obligations, including the Dispatch Commitment, the only service needs addressed in the counterclaim itself is the Dispatch Commitment and the alleged guarantee of nine railcars a day. Where, as here, Defendant has

on Defendant's second counterclaim for breach of quasi-contract is GRANTED.

### 3. Defendant's Third Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, Plaintiff also seeks summary judgment on Defendant's third counterclaim for breach of the implied covenant of good faith and fair dealing arguing, in part, that the written contracts require dismissal. (Pl.'s Br. for S.J. at 16.) Again, the Court agrees.

Similar to the counterclaim under a quasi-contract theory, New York and Florida law are also similar in that a claim for breach of the implied covenant of good faith and fair dealing may be duplicative of a breach of contract claim. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 80 (2d Cir. 2002) (internal quotation marks and citation omitted). Thus, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a

---

counsel, the Court will not liberally construe the claim. <u>See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC</u>, 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012) ("[G]iven that Plaintiff is represented by counsel, the Court has no obligation to construe its Complaint liberally . . . ." (internal quotation marks and citation omitted) (alteration in original)).

breach of contract claim, based upon the same facts, is also pled." Id. at 81.

Likewise, under Florida law, "a breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract." Shibata v. Lim, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000). As such, "a party can maintain a claim for breach of the implied duty only if it is based on allegations different from those underlying the accompanying breach of contract claim." Id.

Here, the only identifiable basis for Defendant's implied covenant counterclaim is breach of the Dispatch Commitment. (See, e.g., Def.'s Ans. ¶¶ 86, 88.) Although Defendant infuses its counterclaim with some amorphous allegations, it is apparent that the counterclaim is wholly duplicative of its breach of contract counterclaim. Accordingly, Plaintiff's motion for summary judgment on Defendant's third counterclaim is GRANTED, and the Court need not consider any additional arguments in this regard.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED, and Defendant's motion for summary judgment is DENIED.

The Clerk of the Court is directed to enter judgment in accordance with this Memorandum and Order and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August __20__ , 2014
       Central Islip, NY