```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
CSX TRANSPORTATION, INC.,

                Plaintiff,

     -against-                            MEMORANDUM & ORDER
                                          12-CV-1865(JS)(AKT)
EMJAY ENVIRONMENTAL RECYCLING, LTD.,

                Defendant,

     and

ISLAND RAIL TERMINAL, INC., MAGGIO
SANITATION SERVICE, INC., and
EASTERN RESOURCE RECYCLING, INC.,

          Garnishees subject to
          restraining notices.
-------------------------------------x
```

APPEARANCES
For Plaintiff:      Christopher Merrick, Esq.
                    Benjamin Mann, Esq.
                    Eric C. Palombo, Esq.
                    Keenan Cohen & Howard PC
                    One Pitcairn Place, Suite 2400
                    165 Township Line Road
                    Jenkintown, PA 19046

                    John Joseph Morris, Esq.
                    Kelly, Rode & Kelly, LLP
                    330 Old Country Road
                    Mineola, NY 11501

For Defendant:      Brian Lee Gardner, Esq.
                    Cole Schotz Meisel Forman & Leonard P.A.
                    900 Third Avenue, 16th Floor
                    New York, NY 10022

For Garnishees:     Jarrett M. Behar, Esq.
                    Sinnreich Kosakoff & Messina LLP
                    267 Carleton Avenue, Suite 301
                    Central Islip, NY 11722

SEYBERT, District Judge:

On September 25, 2014, the Court entered an amended judgment against Defendant Emjay Environmental Recycling, Ltd. ("Emjay") and in favor of Plaintiff CSX Transportation, Inc. ("CSX") for $1,056,444.15. (See Am. J., Docket Entry 79.) Prior to the entry of the judgment, Emjay sold its assets to three garnishees--Island Rail Terminal, Inc., Maggio Sanitation Service, Inc., and Eastern Resource Recycling, Inc. (collectively, the "Garnishees")--for $3,572,011.52. (See generally Contract, Docket Entry 81-3[1].) CSX then served the Garnishees with restraining notices, which prohibited the sale, transfer, or assignment of the Garnishees' debt to Emjay before CSX's judgment had been satisfied (the "Restraining Notices"). (See Ex. C, Restraining Notices, Docket Entry 81-4, at 2, 10, 18; Contract at 34; June 4, 2015 Ltr., Behar Decl. Ex. H, Docket Entry 82-8, at 2.) Nevertheless, the Garnishees negotiated a settlement agreement for two lawsuits consolidated in Suffolk County Supreme Court (the "State Court") involving Emjay and three of its judgment creditors: Environmental Logistics Services ("ELS"), Matthew Crescimanni ("Crescimanni"), and Sullivan Gardner ("SG"). (Behar Decl., Docket Entry 82, ¶¶ 3, 6-7, 22; see generally Ex. B, Feb. 26, 2015 Stip. and Order, Docket Entry 82-2.)

---

[1] All citations to Exhibits reflect the page numbers generated by the Electronic Case Filing System.

On February 25, 2016, the Court granted CSX's motion for a turnover order requiring the Garnishees to satisfy the judgment (the "Turnover Order"). (Turnover Order, Docket Entry 91.) If the settlement funds had already been distributed, the Court invited CSX to apply for a judgment against the Garnishees for violating the Restraining Notices. (Turnover Order at 15.)

Two motions are pending before the Court: (1) CSX's motion to enforce a judgment against the Garnishees (See Mot. to Enforce J., Docket Entry 92) and (2) the Garnishees' motion for reconsideration of the Turnover Order (See Mot. for Recons., Docket Entry 93). For the following reasons, the Court GRANTS CSX's motion and DENIES the Garnishees' motion.

BACKGROUND

The Court assumes familiarity with the facts and prior proceedings, which are referenced only as necessary to explain the Court's decision. To recap, the Restraining Notices prohibited "any sale, assignment, transfer, or interference with any property" in which the Garnishees had an interest "except upon direction of the sheriff or pursuant to an order of the court." (Restraining Notices at 3 (quoting NY CPLR § 5222(b) (McKinney 2009)).) Neither the sheriff nor the Court modified or vacated these Restraining Notices. However, the Garnishees entered into a settlement agreement for two actions consolidated in State Court relating to Emjay. (Behar Decl. ¶¶ 3, 6, 22.) CSX, which was not

3

a party to this consolidated action, initially chose to participate in settlement discussions but later opted out. (Behar Decl. ¶¶ 14, 16–17, 19–21.)

Based on defenses, counterclaims, and any prior payments, the parties reached a $2.2 million settlement, which was approved by the State Court. (See Behar Decl. Ex. B, Feb. 26, 2015 Stip. & Order, Docket Entry 82-2.) After accounting for ELS, Crescimanni, and SG's respective settlements, the Garnishees issued a check to CSX for $8,015.03, which "represent[ed] the remainder of the proceeds after the court-ordered payments … were distributed" of the Garnishees' debt to Emjay. (Behar Decl. ¶ 28; see also Behar Decl. Ex. J, Check, Docket Entry 82-10, at 3.)

What occurred before and after the State Court settlement is crucial. Here are the highlights:

- November 7, 2013: ELS receives a judgment against Emjay for $1,238,807.03. (Feb. 26, 2015 Stip. & Order at 8.)

- November 13, 2013: SG receives a judgment against Emjay for $294,318.82. (Feb. 26, 2015 Stip. & Order at 8.)

- July 24, 2014: Crescimanni receives a judgment against Emjay for $402,013.83. (Feb. 26, 2015 Stip. & Order at 8.)

- September 25, 2014: CSX receives a judgment against Emjay for $1,056,444.15. (See Am. J.)

- November 7, 2014: Crescimanni serves a property execution[2] for his judgment. (Mot. for Recons. Ex. A, Prop. Executions to Garnishees, Docket Entry 93-2, at 16.)

---

[2] "[A] property execution is just a paper delivered to the court's enforcement officer, usually the sheriff, directing the

4

- November 12, 2014: CSX served the Garnishees with the Restraining Notices. (See Restraining Notices.)

- February 26, 2015: The State Court approves the $2.2 million settlement. (See Feb. 26, 2015 Stip. & Order.)

- March 10, 2015: ELS serves a property execution for its judgment. (Prop. Executions to Garnishees at 11-15.)

- June 12, 2015: CSX requests a turnover order. (See Turnover Mot., Docket Entry 81.)

- July 9, 2015: CSX serves property executions for its judgment. (July 14, 2015 Ltr., Docket Entry 86, at 1.)

Following these events, the Court entered the Turnover Order, which required the Garnishees to satisfy CSX's judgment. See CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd., No. 12-CV-1865, 2016 WL 755630, at *5 (E.D.N.Y. Feb. 25, 2016). In pertinent part, the Court concluded that if the Garnishees violated the Restraining Notices, they were liable for the judgment. Id. ("[T]he amount of the unsatisfied judgment is $1,056,444.15, and the Garnishees would have had that amount available if they did not violate the Restraining Notices."). CSX has now applied for a judgment against the Garnishees. (See Mot. to Enforce J.)

The Garnishees have asked the Court to reconsider its Turnover Order, presenting four bases for error. (See Mot. for Recons.) First, the Court failed to apply New York law on priority

---

sheriff to levy against any non-exempt property that can be found belonging to the judgment debtor." Richard C. Reilly, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C5230:1.

of judgments. (Garnishees' Br., Docket Entry 93-1, at 2-5.) Second, the Court incorrectly found that CSX suffered damages. (Garnishees' Br. at 5-8.) Third, the Court misinterpreted the language of New York Civil Practice Law and Rules ("CPLR") Section 5222. (Garnishees' Br. at 8-9.) Fourth, the Court violated the Garnishees' due process rights by failing to hold any hearings or require admissible evidence in deciding the Turnover Order. (Garnishees' Br. at 9-12.)

As discussed below, however, the Garnishees have not cited any controlling law or factual matters that the Court overlooked. Thus, the Garnishees' motion for reconsideration is denied, and the Court adheres to its prior ruling. The Court grants CSX's request to enforce a $1,056,444.15 judgment against the Garnishees for their violation of the Restraining Notices.

## DISCUSSION

I. <u>Motion for Reconsideration</u>

   A. <u>Legal Standard</u>

A motion for reconsideration is appropriate when the moving party believes that the Court overlooked important "'matters or controlling decisions'" that would have influenced the prior decision. <u>Shamis v. Ambassador Factors Corp.</u>, 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (quoting Local Civil Rule 6.3). In that regard, reconsideration is not a proper tool to repackage arguments and issues already considered by the Court in deciding

6

the original motion. United States v. Gross, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002). Nor is it proper to raise new arguments and issues. Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997) (collecting cases). In other words, reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that . . . might reasonably be expected to alter the conclusion reached by the court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001); see also Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (recognizing that the standard for reconsideration is "strict" (collecting cases)).

B. Priority

First, the Garnishees argue that the Turnover Order contravened New York law on priority. (See Garnishees' Br. at 2-5.) To support this stance, they assert that the Court misapplied the Second Circuit's decision in Beauvais v. Allegiance Securities, Inc., 942 F.2d 838, 840-41 (2d Cir. 1991).

Under Beauvais, the Court analyzed whether "money in the Garnishees' possession should be turned over to CSX." CSX Transp., 2016 WL 755630, at *4 (citing Beauvais, 942 F.2d at 840-41). To obtain its turnover order, CSX needed to show, among other things, one of two conditions: "(1) '[Emjay] is entitled to the possession of such property,' or (2) '[CSX's] rights to the property are superior to those of the [Garnishees].'" Id. (quoting Beauvais,

7

942 F.2d at 840 (internal quotation marks omitted)). Without reaching the priority condition, the Court found that Emjay was entitled to the debt owed by the Garnishees. Id. ("Here, the Garnishees owe Emjay $3.5 million based on certain promissory notes and guaranties--funds that would ostensibly be paid to CSX by Emjay to satisfy the judgment."). And the Court, through the Restraining Notices, prohibited "any sale, assignment, transfer, or interference with any property" in which the Garnishees had an interest "except upon direction of the sheriff or pursuant to an order of the court." (Restraining Notices at 3 (quoting N.Y. C.P.L.R. § 5222(b)).) Neither the sheriff nor the Court dissolved this obligation, so the funds should have been available.[3] Cf. Dussault v. Republic of Arg., 616 F. App'x 26, 28 (2d Cir. 2015) (summary order) (injunction imposed by district court); Beauvais, 942 F.2d at 841 (certain rights established by a clearing agreement). Accordingly, the priority condition is not determinative, and the Garnishees are wrong to suggest so.

However, "[i]mplicit in this analysis is that the third party actually has the property the creditor seeks to obtain." Ladjevardian v. Republic of Arg., No. 06-CV-3276, 2016 WL 3039189, at *2 (S.D.N.Y. May 26, 2016), affirmed --- F. App'x ---- (2d Cir.

---

[3] Even factoring in Crescimanni's preexisting property execution, Emjay still would have been able to satisfy CSX's $1,056,444.15 judgment. (See Prop. Executions to Garnishees at 16.)

8

Oct. 17, 2016). The Court premised its Beauvais analysis on the funds being available, but the record indicates that the funds from the State Court settlement had already been disbursed. See CSX Transp., 2016 WL 755630, at **4–5. The Garnishees' attorney stated, under penalty of perjury, that he issued the $8,015.13 check "after the court-ordered payments pursuant to the Settlement Order were distributed." (Behar Decl. ¶ 28.) Thus, as further explained below, the Court's ultimate conclusion rested on a damages analysis. CSX Transp., 2016 WL 755630, at *5. In that vein, the "Turnover Order" is a misnomer because the Court also invited CSX to apply for a judgment against the Garnishees if they distributed the settlement funds in violation of the Restraining Notices. See id. at *6.

C. Damages

Next, the Garnishees challenge the Court's conclusion that CSX suffered $1,056,444.15 in damages. (See Garnishees' Br. at 5-8.) A judgment creditor must prove damages by "demonstrat[ing] that property of the judgment debtor was available to satisfy the judgment at the time the restraining notice was in effect." Aspen Indus. v. Marine Midland Bank, 52 N.Y.2d 575, 581, 421 N.E.2d 808, 812, 439 N.Y.S.2d 316 (1981). "[T]he amount of damages is 'the amount of the judgment remaining unsatisfied, but limited to the amount in the account which would have been available to satisfy the judgment . . . and costs.'"

9

CSX Transp., 2016 WL 755630, at *5 (quoting Nardone v. Long Island Trust Co., 40 A.D.2d 697, 697, 336 N.Y.S.2d 325, 327 (2d Dep't 1972)).

The Garnishees principally rest their argument on Aspen, but that case is fully consistent with the Turnover Order. In Aspen, a judgment creditor served a third-party bank with a restraining notice because the debtor had a checking or savings account with the bank. Aspen, 52 N.Y.2d at 577–78, 421 N.E.2d at 809. The restraining notice prohibited the bank from "transfer[ring] or otherwise dispos[ing] of any of the moneys contained in a checking and/or savings account in the name of [the debtor]." Id. at 578, 421 N.E.2d at 809–10 (internal quotation marks omitted). But the bank later exercised its right of setoff for a debt that preexisted the restraining notice, exhausting all the available funds. See id., 421 N.E.2d at 810.

Taking account of that preexisting obligation, the Court found that even if the bank violated the restraining notice, the creditor did not sustain any damages. Id. at 581, 421 N.E.2d at 811. "[T]he rights conferred under a restraining notice . . . clearly are subject to the superior right of setoff" under the applicable section of the Debtor and Creditor Law. Id. at 582, 421 N.E.2d at 812. The bank's rights trumped the creditor's, and no funds were left over. Id. at 583, 421 N.E.2d at 812.

Here, in contrast to Aspen, the Garnishees would have been able to satisfy CSX's judgment if they did not violate the Restraining Notices. As an initial matter, the Court recognizes that restraining notices do not grant priority. See Adidas Sportschufabriken v. New Generation, No. 88-CV-5519, 1995 WL 646213, at *3 (S.D.N.Y. Nov. 3, 1995) ("[T]he restraining notice operates like an injunction."). Instead, "the order of priority among judgments is to be determined strictly in accordance with the chronological service of execution levies and the filing of orders for turnover or receiverships." City of N.Y. v. Panzirer, 23 A.D.2d 158, 160, 259 N.Y.S.2d 284 (1st Dep't 1965).

Two property executions pre-date the Restraining Notices: (1) one filed by Crescimanni on November 7, 2014 for his $402,013.83 judgment and (2) the other filed by ELS on March 10, 2015 for its $1,238,807.03 judgment. (See Feb. 26, 2015 Stip. & Order at 8; Prop. Executions to Garnishees at 11–16.) But the operative date is February 26, 2015, which is when the State Court approved the settlement agreement and the Garnishees violated the Restraining Notices. In other words, only Crescimanni's property execution pre-dates the settlement order. So even if the Court preserved the $2.2 million settlement figure and offset Crescimanni's $402,013.83 judgment, the Garnishees would have had $1,797,986.17 left over to satisfy CSX's $1,056,444.15 judgment.

11

Nevertheless, the Garnishees argue that the Turnover Order will lead to bad policy consequences. (See Reply Br., Docket Entry 97, at 6.) But the Court is not inviting a free-for-all where junior creditors can bypass the rights of senior creditors and impair the proper distribution of assets. To the contrary, the Court agrees that priority creditors should be paid first. Like the Aspen bank's right of setoff, Crescimanni's property execution grants him a superior right. However, ELS's property execution, which occurred after the Garnishees violated the Restraining Notices, does not. Accordingly, the Turnover Order comports with Aspen, and the Court reaffirms that CSX has suffered damages for the Garnishees' violation of the Restraining Notices.

D. C.P.L.R. Section 5222

In rejecting this outcome, the Garnishees criticize the Court's interpretation of C.P.L.R. Section 5222. (See Garnishees' Br. at 8-9.) Under Section 5222, a party served with a restraining notice is "forbidden to make or suffer any sale, assignment, transfer or interference with any [of the judgment debtor's] property . . . to any person other than the sheriff, . . . except upon direction of the sheriff or pursuant to an order of the court." NY CPLR § 5222(b). In the Turnover Order, the Court found that the phrase "an order of the court" only referred to "the court that issued the judgment." CSX Transp., 2016 WL 755630, at *5. But in the Garnishees' view, any court is acceptable; therefore,

the State Court was free to vacate the Restraining Notices. (See Garnishees' Br. at 8.) That reasoning, however, is misconceived.

"Statutory analysis begins with the plain meaning of a statute." Natural Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir. 2001) (citation omitted). The Advisory Committee did not specify whether the phrase "order of the court" refers to an order by any court or only the court that issued the underlying judgment. To resolve this ambiguity, the Court must consider canons of statutory construction.

Two canons are relevant here. "First, when determining which reasonable meaning should prevail, the text should be placed in the context of the entire statutory structure." Id. Second, this phrase "should be interpreted in a way that avoids absurd results." United States v. Dauray, 215 F.3d 257, 260 (2d Cir. 2000).

Although no other case appears to have addressed this precise issue, the natural reading of Section 5222 suggests that only the court that issued the judgment may vacate a restraining notice. Permitting any court in any circumstance to undo a restraining notice would not only injure the rights of creditors but also threaten this Court's injunctive power. On that basis, the Garnishees' expansive reading would produce absurd results.

The Practice Commentary to Section 5222 reinforces the Court's interpretation. Relevant for present purposes, the

13

Practice Commentary explains that "[i]f the restraining notice is defective in some way . . . it can be vacated on motion. The motion should of course be made to <u>the court out of which the restraining notice issued</u> (i.e., was captioned), which will usually but not invariably be the court that rendered the judgment being enforced." Richard C. Reilly, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C5222:9 (emphasis added). The word "should" is used because exceptions can occur. One example is <u>In re Stein's Estate</u>, 60 Misc. 2d 544, 303 N.Y.S.2d 31 (Sur. Ct. Westchester Cty. 1969). In that case, the City Court of the City of New York entered a judgment against the executor of an estate, but the Surrogate's Court vacated a restraining notice against the executor. <u>Id.</u> at 544–45, 303 N.Y.S.2d at 32. The Surrogate's Court provides scant details on the factual background, but "[p]resumably the debt involved in the <u>Stein</u> case was once incurred by the decedent," not the executor. <u>See</u> Richard C. Reilly, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C5222:9. Otherwise, "it is doubtful that the surrogate would have any jurisdiction to undo a restraining notice issued out of another court after the latter's rendition of judgment." <u>Id.</u>

The Garnishees essentially argue that the Supreme Court vacated the Restraining Notices because otherwise they must

concede that the Restraining Notices were violated.[4]  But the Garnishees never moved for a vacatur under Section 5222 to this Court, nor did they move for a modification under Section 5240.  Compare N.Y. C.P.L.R. § 5222(b) (forbidding a garnishee from transferring any property in violation of a restraining notice except, for example, by "an order of the court") with id. § 5240 (McKinney 2016) (empowering a court "at any time, on its own initiative or the motion of any interested person . . . [to] make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure"); see also Cruz v. T.D. Bank, N.A., 711 F.3d 261, 265 (2d Cir. 2013) ("CPLR 5240 grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice." (internal quotation marks and citation omitted)).  Thus, in these circumstances, Section 5222 did not permit the State Court to vacate or modify the Restraining Notices issued from this Court.

---

[4] The Supreme Court record made available to the Court contains no mention of the Restraining Notices.  (Feb. 24, 2015 Settlement Conf. Tr., Docket Entry 82-3, 6:24-7:25, 12:10-13:7, 19:3-18.)  However, the Garnishees argue that the Supreme Court was apprised off the record.  (Garnishees' Br. at 11 ("Although not explicitly referenced in the proceedings that took place on the record, the Supreme Court was informed at prior conferences of the restraining notices . . . .").)

None of the cases relied on by the Garnishees justify a different outcome. For example, Heymann v. Brechner, No. 95-CV-1329, 1996 WL 580915, at *6 (S.D.N.Y. Oct. 9, 1996), recites general principles that are not in dispute. See id. (recognizing that district courts have the post-judgment authority to modify a restraining notice under C.P.L.R. Section 5240). The same is true of Wandschneider v. Bekeny, 75 Misc. 2d 32, 39, 346 N.Y.S.2d 925, 932 (Sup. Ct. Westchester Cty. 1973), which merely emphasizes that "a federal judgment docketed in the courts of this State shall be treated 'as a judgment entered in the supreme court' of this State" (quoting N.Y. C.P.L.R. § 5240) (citing NY CPLR § 5018). Id.; accord Viacom Outdoor Grp., Inc. v. McClair, 62 A.D.3d 864, 864–65, 878 N.Y.S.2d 785, 785–86 (2d Dep't 2009) (analyzing whether a bank violated a restraining notice in connection with an Arizona judgment). Accordingly, the Court adheres to its original interpretation of Section 5222.

E. Due Process

The Garnishees fare no better with their due process argument. (See Garnishees' Br. at 9-12.) Their primary contention is that New York courts routinely require hearings to determine the proper judgment amount. (Garnishees' Br. at 10 (citing Nardone, 40 A.D.2d at 697, 336 N.Y.S.2d at 327).)

But contrary to the Garnishees' assertion, a hearing is not required in every case. See Michigan Assocs. v. Emigrant

16

Savings Bank, 74 Misc. 2d 495, 502, 345 N.Y.S.2d 329, 336 (Civ. Ct. Queens Cty. 1973) ("Since there is no issue of fact concerning damages--there being no issue regarding the dates and amounts of the withdrawals, the dates of service of the restraining notice and execution and the subsequent proceedings . . . the amount of damage, if any, may be determined without any hearing."). On the other hand, the Nardone court required a hearing because "some portion of the amounts on deposit . . . may not have been the property of the judgment debtor." Nardone, 40 A.D.2d at 697, 336 N.Y.S.2d at 327.

Here, the Garnishees have not raised any issues of fact. As discussed above, at least $1,056,444.15 would have been available if the Garnishees had not violated the Restraining Notices. Thus, the Court need not hold a hearing to determine the proper judgment amount.

## II. Motion to Enforce Judgment

For the reasons explained above, the Garnishees are liable for CSX's $1,056,444.15 judgment because they violated the Restraining Notices. In that regard, CSX's request to enforce its judgment against them is granted.[5] (See Docket Entry 92.)

---

[5] The Court is mindful that the Garnishees previously tendered $8,015.13 by check. The parties may choose to offset that amount or cancel the check and issue the full $1,056,444.15.

17

However, CSX is not entitled to post-judgment interest. (See CSX's J. Br., Docket Entry 92-1, at 3.) The Second Circuit has held that under 28 U.S.C. § 1961, "federal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions." Cappiello v. ICD Publ'ns, Inc., 720 F.3d 109, 112 (2d Cir. 2013). This interest rate is "calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a). But CSX had a judgment against Emjay, not the Garnishees. Accordingly, CSX's request for post-judgment interest is denied.

## CONCLUSION

The Garnishees' motion for reconsideration of the Turnover Order (Docket Entry 93) is DENIED, and CSX's motion to enforce a $1,056,444.15 judgment against the Garnishees (Docket Entry 92) is GRANTED.

The Clerk of the Court is respectfully directed to amend the judgment as follows: Plaintiff is awarded damages in the amount of $1,056,444.15 against Island Rail Terminal, Inc., Maggio Sanitation Service, Inc., and Eastern Resource Recycling, Inc., and this case remains CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  November  2 , 2016
        Central Islip, New York